UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
TVB HOLDINGS (USA), INC., CHINA CENTRAL TELEVISION, CHINA INTERNATIONAL COMMUNICATIONS CO. LTD, and DISH NETWORK L.L.C,

             Plaintiffs,

-against-

HTV INTERNATIONAL LIMITED, and JOHN DOES 1-10,

             Defendants.
------------------------------------------------------------ x

**REPORT AND RECOMMENDATION**

16-CV-1489 (DLI)(PK)

**Peggy Kuo, United States Magistrate Judge:**

      Plaintiffs TVB Holdings (USA), Inc. ("TVB (USA)"), China Central Television ("CCTV"), China International Communications Co. Ltd. ("CICC"), and DISH Network L.L.C. ("DISH") (collectively, "Plaintiffs") are production and distribution companies which own the exclusive rights to exploit copyrighted CCTV and TVB television programming in the United States. (Am. Compl. ¶ 2, Dkt. 7.) Plaintiffs brought this action, pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, against HTV International Limited ("HTVI" or "Defendant") and several John Doe defendants who are unidentified affiliates, agents and co-conspirators of HTVI for direct, contributory, and vicarious copyright infringement. They allege that Defendants set up a pirate broadcasting network that captures CCTV and TVB television programming and streams it over the Internet to the U.S. customers without Plaintiffs' permission or any compensation to them. (*Id.* ¶ 3.) Plaintiffs now move for default judgment against HTVI and seek statutory damages for willful copyright infringement and injunctive relief. (Plaintiffs' Memorandum of Law ("Pls.' Mem.") at 20-24, Dkts. 62-63.) The Honorable Dora L. Irizarry has referred Plaintiffs' Motion for Default Judgment ("Motion") to the undersigned for a report and recommendation. (*See* May 2, 2017 Order.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted.

1

**FACTUAL BACKGROUND**

Plaintiff CCTV is the largest producer and broadcaster of Chinese-language television in mainland China. (Am. Coml. ¶¶ 1, 13.) It along with its subsidiary CCTV are state-owned companies existing under the laws of China. (*Id.* ¶¶ 13-14.) Plaintiff CCIC licenses and distributes CCTV programming in the U.S. (*Id.* ¶ 14.) TVB is another subsidiary company of CCTV and is the largest broadcaster of Chinese-language television in Hong Kong. (*Id.* ¶ 1.) Plaintiff TVB (USA) is a subsidiary company of TVB based in Hong Kong. (*Id.* ¶¶ 1, 12.) It distributes and licenses TVB television programming in the U.S. (*Id.* ¶ 12.) Plaintiff DISH is a television services company that has the exclusive right to transmit TVB (USA) channels in the U.S. (*Id.* ¶ 26.) Together, Plaintiffs are the owners of the exclusive right to exploit the copyrighted programming in this case, consisting of 1,538 episodes of 55 copyrighted television series ("Plaintiffs' Copyrighted Programming") produced by CCTV and TVB. (*Id.* ¶ 2; Plaintiffs' Suppl. Memorandum of Law ("Pls.' Suppl. Mem.") at 2, Dkt. 71.)

Defendant is a Hong Kong company that manufactures and sells "h.TV" set-top boxes which enable users to access, view, and share Plaintiffs' Copyrighted Programming without authorization from Plaintiffs. (*See* Corporate Disclosure Statement, Dkt. 15; Am. Compl. ¶¶ 1, 4, 7.) To do this, Defendant captures CCTV and TVB programs, converts them to Internet-friendly formats, and stores them on servers in the U.S. and other countries (*Id.* ¶¶ 5, 44, 47.) Defendant makes these unauthorized copies, including the Copyrighted Programming, available for streaming through h.TV applications or "apps" that provide "Live-Streaming," "Video On Demand," or "Playback." (*Id.* ¶¶ 4, 44-45 47, 54, 87; February 14, 2018 Proc. Transcript ("Transcript") at 25, Dkt. 78.) It also allows users of h.TV to stream and simultaneously retransmit Plaintiffs' Copyrighted Programming to other h.TV users in the U.S. through the h.TV peer-to-peer network. (Am. Compl. ¶¶ 5, 49.)

2

Defendant sells h.TV devices to consumers in the U.S. and elsewhere for up to $299 per unit. (*Id.* ¶ 4.) It advertises the h.TV devices and apps expressly for the purpose of viewing CCTV and TVB programming, and provides technical support and customer assistance to h.TV users. (*Id.* ¶ 9.)

At some point during this litigation, while claiming to have stopped infringing activities, Defendant started selling rebranded h.TV devices under the names, "A1" and "A2." (*See* Pls.' Mem. at 6-8; Nicholas Braak Decl. ¶¶ 5-12, Dkt. 62-1.) Plaintiffs allege that these devices, which also "feature app stores that allow users to download infringing apps that stream infringing copies of CCTV and TVB programming," can be traced back to Defendant. (*See* Pls.' Mem. at 7; Nicholas Braak Decl. ¶¶ 15-21; *Id.* Ex. E.)

## PROCEDURAL BACKGROUND

On March 25, 2016, Plaintiffs TVB (USA) and DISH filed this action against HTVI and ten John Doe defendants, alleging that they infringed Plaintiffs' exclusive copyrights under 17 U.S.C. § 106. (*See* Compl., Dkt. 1.) On April 7, 2016, the Amended Complaint was filed, adding CCTV and CICC as additional plaintiffs. (*See* Am. Compl.) Defendant filed an Answer to the Complaint and, shortly thereafter, moved to change venue, which was denied for failure to comply with Chief Judge Irizarry's Individual Rules and Practices. (*See* Answer to Compl., Dkt. 13; Defendant's First Motion to Change Venue, Dkt. 22; August 11, 2016 Order.) On August 26, 2016, Defendant re-filed its motion to change venue. (Defendant's Second Motion to Change Venue, Dkt. 32.)

Plaintiffs moved to compel discovery on September 7, 2016, acknowledging that Defendants timely served their written responses to the first set of interrogatories and produced some documents, but arguing that these responses and documents were "plainly insufficient." (Plaintiffs' Motion to Compel at 1, Dkt. 33.) On September 14, 2016, the Court granted Plaintiffs' motion to compel and warned Defendant's counsel that sanctions may be imposed if Defendant did not meet

3

its discovery obligations. (*See* September 14, 2016 Order, Dkt. 36.) On October 27, 2016, with Plaintiffs' consent, Defendant filed an Answer to the Amended Complaint. (*See* Dkts. 41-42.) On November 15, 2016, Plaintiffs moved to impose sanctions on Defendant for "evad[ing] the discovery order and . . . selectively produc[ing] only some documents, while improperly concealing the existence of other responsive documents." (Plaintiffs' Motion for Sanctions at 2, Dkt. 45.) The Court deferred ruling on this matter, and ordered Defendant to file a declaration "providing a detailed description of [its] efforts to collect and preserve documents responsive to Plaintiffs' discovery requests." (November 22, 2016 Order, Dkt. 48.)

On December 2, 2016, the date by which HTVI was ordered to file a response to the November 22, 2016 Order, counsel for HTVI moved to withdraw as counsel. (Motion to Withdraw as Counsel, Dkt. 52.) Attorney Wang declared that Defendant failed to "cooperate with counsel to comply with the Court's orders and rules regarding its discovery obligations," "it [wa]s no longer interested in defending itself in this case," and it did not intend to seek new counsel. (Wang Decl. ¶¶ 2-3, Dkt. 52.) A hearing was held, at which a representative of Defendant HTVI was ordered to appear. (*See* November 30, 2016 Order.) No representative of HTVI appeared. (*See* December 5, 2016 Order.) The motion to withdraw as counsel was granted and defense counsel was terminated from the case. (*See* December 5, 2016 Order.) Plaintiffs then filed a motion for sanctions, requesting that the Court strike Defendants' Answers and enter default against HTVI. (Motion for Sanctions, Dkt. 53.)

The Court terminated Defendant's motion to change venue as abandoned and granted Plaintiffs' motion to strike the Answers. (*See* March 17, 2017 Order.) The Court further instructed Plaintiffs to request a certificate of default from the Clerk of Court. (*See id.*) On March 22, 2017, Plaintiffs requested a certificate of default against Defendant, which was granted. (Dkt. 59; April 20, 2017 Entry of Default.) On April 28, 2017, Plaintiffs filed the Motion. (Dkts. 62-63.) At the Court's

4

direction, Plaintiffs supplemented their motion papers on December 8, 2017 and February 9, 2018. (*See* Dkts. 68-69; Dkt. 76.)

The Court held an inquest and required Plaintiffs to file supplemental letters. (*See* February 5, 2018 Order; February 15, 2018 Order; February 28, 2018 Order.)

## DISCUSSION

### I. Standard for Default Judgment

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation. *See* Fed. R. Civ. P. 55; *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It provides "a 'two-step process' for the entry of judgment against a party who fails to defend." *Mickalis Pawn Shop, LLC*, 645 F.3d at 128; *see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). First, the Clerk of Court enters a default when a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Then, a party may "apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

A default "constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers,* 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (citations omitted). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co.*, 696 F. Supp. 2d at 208. The court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of damages. *See id.* at 208 (internal citations omitted); *see also Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999).

The court must also ensure that jurisdictional requirements are satisfied, *see Mickalis Pawn Shop, LLC,* 645 F. 3d at 133, and that all procedural steps in moving for default judgment have been taken, *see* Local Civ. R. 55.2(c).

## II.     Jurisdictional and Procedural Requirements

This Court has subject matter jurisdiction over this action because it has been brought under the federal copyright laws. *See* 28 U.S.C. § 1338(a). Moreover, the Court's exercise of personal jurisdiction over Defendant is appropriate under New York's long-arm statute, as it has conducted business within New York by "transmitting, selling, and supplying," as well as "offering to transmit, sell and supply" the h.TV retransmission services and h.TV devices to customers and business partners in New York. (Am. Compl. ¶¶ 18-19; Pls.'s Mem. Exs. G-H, Dkts. 62-8, 62-9.) *See* N.Y. C.P.L.R. 302(a)(1); *see also Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 170-71 (2d Cir. 2010) (exercising personal jurisdiction over an out-of-state Defendant based on its business activities in New York). Defendant was also properly served at its registered corporate office in Hong Kong, a method of service authorized by the Hague Convention. (*See* Dkt. 6.) *See also* Fed. R. Civ. P. 4(h)(2); Fed. R. Civ. P. 4(f)(1).

Additionally, Plaintiffs have demonstrated that they have taken the required procedural steps to provide proper notice to Defendant: a Certificate of Default was requested and entered against Defendant, and Defendant was served with all motion papers. (*See* Dkts. 59, 69, 73, 75, 77.)

## III.     Liability

When determining liability, the Court accepts as true all well-pleaded allegations in the Complaint, drawing all reasonable inferences in favor of Plaintiffs. *See Au Bon Pain Corp v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see also Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Plaintiffs seek a default judgment against Defendant for copyright infringement. In order to establish a *prima facie*

6

claim of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted); *see also Sheldon v. Plot Commerce,* No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, at *11 (E.D.N.Y. Aug. 26, 2016), *R&R adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016).

Under the Copyright Act, Plaintiffs must establish their ownership over the Copyrighted Programming as "the legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501(b). Plaintiffs have established their ownership by submitting copies of Copyright Office certificates of registration showing TVB as the claimant of the copyrights covering 1,538 television episodes of the Copyrighted Programming. (*See* Koonce Decl. Ex. A, Dkt. 72.) A certificate of registration from the Copyright Office constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980) (quoting 17 U.S.C. § 410(c)). Plaintiffs CCTV and TVB (USA) are the legal owners of the Copyrighted Programming as the parent and subsidiary companies of TVB, respectively. (*See* Am. Compl. ¶ 1.) Plaintiffs CICC and DISH qualify as the beneficial owners since "an exclusive license granted by the copyright owner constitutes a transfer of ownership of the copyright rights conveyed in the license." *U.S. Naval Inst. v. Charter Comm'ns, Inc.,* 936 F.2d 692, 695 (2d Cir. 1991) (citing 17 U.S.C. § 101). Defendant has defaulted and this presumption of validity over Plaintiffs' copyrights remains unrebutted.

Plaintiffs seek to establish that Defendant is liable for direct, contributory and vicarious infringement. Plaintiffs allege that Defendant, willfully and with full knowledge, "reproduces and retransmits entire CCTV and TVB channels and individual copyrighted CCTV and TVB television programs to h.TV users in the United States twenty-four hours a day, seven days a week, directly infringing Plaintiffs' public performance rights and reproduction rights under U.S. copyright law."

7

(Am. Compl. ¶ 43; *see also* Pls.' Mem. at 12.)  Plaintiffs argue that Defendant commits infringing acts in three main ways: (1) by capturing television programs that are converted to Internet-friendly formats; (2) by streaming them at least in part using peer-to-peer technology over the Internet, and (3) by directly streaming television programs over the Internet from servers in the U.S. and elsewhere.  (Am. Compl. ¶ 44.)  Unauthorized reproduction, distribution, and performance of the copyrighted work constitutes direct infringement and "copying" under the Copyright Act.  *See* 17. U.S.C. § 106(1), (3)-(4); *Getty Images (U.S.), Inc. v. Microsoft Corp.*, 61 F. Supp. 3d 301, 303–04 (S.D.N.Y. 2014) ("The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in § 106.") (internal citations omitted).  Accepting Plaintiffs' allegations as true, Defendant is liable for direct infringement.

Defendant is also liable for contributory copyright infringement.  In order to hold Defendant liable for contributory infringement, Plaintiffs must show that Defendant, "with knowledge of the infringing activity, . . . induces, causes, or materially contributes to the infringing conduct of another."  *Broad. Music, Inc. v. JJ Squared Corp.*, No. 11-CV-5140 (JFB) (AKT), 2013 WL 6837186, at *6 (E.D.N.Y. Dec. 26, 2013) (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)).  Defendant's knowledge of the infringing activity is clearly established in its acknowledgement of the receipt of the "cease-and-desist letter" from Plaintiffs.  *See Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 124 (S.D.N.Y. 2015), *aff'd on other grounds,* 839 F.3d 163 (2d Cir. 2016).  The "material contribution" prong is also met because, by manufacturing and distributing the h.TV devices and controlling the h.TV app stores and apps, Defendant "provides the site and facilities or the environment and market for infringing activit[ies]."  *Broad. Music, Inc.*, 2013 WL 6837186, at *6; (*see also* Pls.'s Mem. at 13.)

Lastly, Defendant is vicariously liable for copyright infringement.  Vicarious infringement does not require proof of knowledge, but it requires a showing that Defendant has "the right and

8

ability to supervise the infringing activity [of others] and . . . a direct financial interest in such activities." *Broad. Music, Inc.*, 2013 WL 6837186, at *5. Plaintiffs allege that Defendant "practically and legally controls all aspects of the h.TV stores and Infringing h.TV Apps," and "aggressively advertises and promotes the Infringing TV Services, the infringing capabilities of the h.TV device, and the Infringing h.TV Apps." (Pls.' Mem. at 13; *see* Am. Compl. ¶¶ 42-71.) Defendant has an ability to supervise the infringing activities of the h.TV users because it provides the site at which the users engage in infringing activities—*i.e.,* h.TV apps. Defendant also has a financial interest in the infringing activities through its sale of the h.TV devices used to access and distribute Plaintiffs' Copyrighted Programming. Plaintiffs' allegations are sufficient to establish Defendant's vicarious infringement.

Accordingly, the undersigned recommends a finding that Defendant is liable for direct, contributory and vicarious copyright infringement.

**IV. Damages**

A copyright infringer is liable for either actual damages and profits, or for statutory damages. 17 U.S.C. § 504(a). In this case, Plaintiffs seek statutory damages. (*See* Pls.' Mem. at 14-21.) The copyright owner may elect an award of statutory damages "for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000." 17 U.S.C. § 504(c)(1). Upon a finding of willfulness, the court "may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

a. <u>Finding of Willfulness</u>

In order to prove that an infringer acted with willfulness, the copyright holder "must show that the infringer had knowledge that its conduct represented infringement or . . . recklessly disregarded the possibility." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010) (quoting *Twin Peaks Prods., Inc. v. Publ'ns. Int'l Ltd.,* 996 F.2d 1366, 1371 (2d Cir. 1993)). The

9

infringer's knowledge "need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992).

Plaintiffs have shown that Defendant had knowledge that its conduct constituted copyright infringement. First, prior to filing this lawsuit, Plaintiff TVB (USA) sent a cease-and-desist letter to Defendant, requesting it to "stop infringing and contributing to the infringement of Plaintiffs' rights in copyrighted TVB television programming." (Am. Compl. ¶ 82.) The letter "identified [i]nfringing h.TV Apps and provided a representative list of TVB programs, streamed without authorization through the h.TV device." (*Id.*) Defendant confirmed its receipt of this cease-and-desist letter, but continued to reproduce and retransmit Plaintiffs' Copyrighted Programing. (*See id.*; Plaintiffs' December 5, 2017 Letter, Dkt. 67.) Second, while claiming to have removed the h.TV apps from the h.TV store, Defendant started selling rebranded h.TV devices under different names. (*See* Pls.' Mem. at 6-8, 17; Nicholas Braak Decl. ¶¶ 5-12.)[2] Third, Defendant has repeatedly failed to cooperate during the course of this litigation, including by failing to meet its discovery obligations and refusing to participate in these proceedings, ultimately defaulting. (*See, e.g.,* Wang Decl. ¶ 2.)

Therefore, it can be inferred from the facts of this case that Defendant knew or, even if it did not know, recklessly disregarded the possibility, that it was engaging in conduct that constituted copyright infringement.

  b. <u>Award of Statutory Damages on a Per-Episode Basis</u>

A copyright holder may recover statutory damages for the infringement of "any one work." 17 U.S.C. § 504(c)(1). For the purposes of Section 504(c)(1), "all the parts of a compilation or

---

[2] The private investigator hired by Plaintiffs declares that "the internet retailers and h.TV device users stated that the 'A1' [device] was a rebranded h.TV device created to circumvent this lawsuit," and has been described in retailer marketing as the "h.TV 4." (Nicholas Braak Decl. ¶ 7.) While Defendant never marketed or sold A1 devices as "h.TV 4," it "sells [ ] h.TV 5 [devices] outside the United States." (*Id.*) The investigator adds that "[i]n numbering h.TV devices, HTVI skipped the number 4," leading to the inference that the "A1" was meant to be h.TV 4. (*Id.*)

10

derivative work constitute one work." *Id.* In order to determine what constitutes a compilation in the context of the one-award restriction set out in Section 504(c)(1), courts have focused on "whether the plaintiff—the copyright holder—issued its works separately, or together as a unit." *Bryant*, 603 F.3d 135 at 141 (citing *Twin Peaks Prods., Inc.*, 996 F.2d at 1381; *WB Music Corp. v. RTV Comm. Group, Inc.*, 445 F.3d 538, 541 (2d Cir. 2006)). Thus, a plaintiff may receive a separate award of statutory damages for each episode of a series only if it "issued the works separately, as independent television episodes." *Id.* (internal citations omitted); *see also Arista Records LLC v. Lime Group LLC,* No. 06-CV-5936 (KMW), 2011 WL 1311771, at *2 (S.D.N.Y. April 4, 2011).

Plaintiffs seek a statutory damage award for each episode of their copyrighted television series. (*See* Pls.' Mem. at 21.) In order to show that they are entitled to an award on a per-episode basis, Plaintiffs submit a declaration of Plaintiff TVB (USA)'s Vice President of Operation, Samuel P. Tsang, who declares that, "each of the 1,538 television episodes at issue was broadcast separately, on different dates, and not together as a unit." (Samuel P. Tsang Decl. ¶ 2, Dkt. 76-1; *see also* Plaintiffs' February 9, 2018 Letter, Dkt. 76.) During the inquest, Tsang testified that the 55 copyrighted television series at issue consist of multiple episodes each. (*See* Transcript at 11.) They are dramas or comedy dramas with names such as "A Great Way to Care II," "A Step in to the Past," and "All That is Bitter Is Sweet." (Koonce Decl. ¶ 4, Dkt. 72; Transcript at 11.) Plaintiffs provided a list of the series titles and the number of episodes in each series. (Koonce Decl. ¶ 4.) Each episode was originally aired in Hong Kong on a daily basis and viewers had to wait until the following day to watch the next episode. (*See* Transcript at 11-12, 14; *see also* Samuel P. Tsang Decl. ¶ 6.) Tsang explained that each series is typically aired at a specific time each day from Monday through Friday, one episode at a time. (*See* Transcript at 11-12.) For example, a series with an 8 o'clock time slot would air an episode at 8:00 p.m. on Monday, the next episode at 8:00 p.m. on Tuesday, and so on. (*See id.* at 12.) Tsang testified that all 55 titles are broadcast the same way and

11

that there is no exception. (*See id.* at 13-14.) Tsang also testified that, at the conclusion of each episode, there are "rolling credits" in which all actors, sponsors and other related personnel are recognized for their contribution to that specific episode, further bolstering the characterization of each episode as an individual work. (*See id.* at 12-13.)

Additionally, Tsang's testimony emphasized that, even when Plaintiffs make their Copyrighted Programming available to the U.S. viewers through various licensing agreements, they adhere to the same method of distribution—each episode is aired on a separate day successively on a fixed schedule. (*See id.* at 15-16.) Plaintiffs' Copyrighted Programming is available in a compiled form in Defendant's infringing apps only because Defendant compiled them. Section 504(c)(1) does not preclude an award on the basis of an individual TV episode or sound track because the defendant infringers, without the plaintiff's authorization, later "created the compilations . . . from those separate episode/sound recordings." *Arista Records LLC*, 2011 WL 1311661, at *2 (citing *Bryant*, 603 F.3d at 141).

The undersigned finds that Plaintiffs have adequately demonstrated that each individual episode must be treated as a separate work for purposes of awarding statutory damages. Tsang's sworn declaration and testimony show that Plaintiffs issued the 1,538 registered works separately, "as independent television episodes." *See* Bryant, 603 F.3d 135 at 141. Accordingly, the undersigned recommends that Plaintiffs be awarded for the infringement of each televised episode.

    c. <u>Calculation of Damages</u>

When determining the amount of statutory damages to award for copyright infringement, a court may consider: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant*, 603 F.3d 135 at 144.

12

Plaintiffs request an award of $30,000 for each of the 1,538 registered works, for a total recovery of $46,140,000 in statutory damages. (Pls.' Mem. at 21.) Even though Plaintiffs did not establish the exact amount of the revenue they lost, an evaluation of the remaining pertinent factors strongly weigh in favor of Plaintiffs. First, as previously noted, Plaintiffs have demonstrated the willfulness of Defendant's state of mind, conduct and attitude while infringing Plaintiffs' copyrights before and during the course of this lawsuit. Second, Plaintiffs allege that Defendant has earned significant profits as a result of its infringing conduct. Based on a document produced by Defendant, Plaintiffs show that Defendant has sold at least 121,190 h.TV devices for $279 to $299 each, for total sales of between $33,812,010 and $36,235,810. (Pls.' Mem. at 19; *see also* George P. Wukoson Decl. Ex. F, Dkt. 63-6.) Plaintiffs add that "even this $36 million figure significantly understates HTVI's actual sales of h.TV devices in the U.S. because HTVI continued to sell h.TV devices after" the date it turned over the document during discovery. (Pls.' Mem. at 19.) Third, Plaintiffs have established the importance of deterring future infringing activities, especially considering the nature of the h.TV device and of the h.TV transmission services, which allow Defendant to reproduce and retransmit Plaintiffs' Copyrighted Programming on a massive scale. Lastly, Defendant has not been cooperative in providing information concerning the value of the infringing material. On the contrary, Plaintiffs had to move to compel discovery and to request sanctions after confronting Defendant's lack of cooperation in providing its records. (*See, e.g.*, Dkts. 33, 36, 45.)

Taking all of these factors into account, the undersigned finds that Plaintiffs' request of $30,000 for each copyrighted work—significantly less than the maximum amount of $150,000 per work permitted under the statute—is reasonable. Accordingly, the undersigned recommends that Plaintiffs be awarded statutory damages in the amount of $30,000 for each of the 1,538 registered works, for a total of $46,140,000.

### V. Permanent Injunction

Pursuant to Section 502(a) of the Copyright Act, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. Permanent injunctions are appropriate and generally granted, as here, "where liability has been established and there is a threat of continuing infringement." *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 319 (E.D.N.Y. 2007); *see also Island Software & Computer Serv., Inc. v. Microsoft Corp.,* No. 01-CV-750 (WDW), 2006 WL 1025915, at *2 (E.D.N.Y. April 13, 2006), *aff'd,* 282 F. App'x 31 (2d Cir. 2008).

Defendant's conduct in the course of this litigation provides a basis for finding a threat of continuing infringement. Defendant has continued to engage in infringing activities despite Plaintiffs' warning of possible copyright infringement, and even after the commencement of this lawsuit. (*See* Am. Compl. ¶ 82.) In order to circumvent this lawsuit, it even rebranded the h.TV devices under different names. (*See* Pls.' Mem. at 7-8, 17; Nicholas Braak Decl. ¶¶ 5-12.) At the inquest, Tsang testified that, as of February 13, 2018, Defendant was continuing its infringing activities by making livestreaming or video-on-demand available on these devices. (*See* Transcript at 29.) Moreover, Defendant failed to meet its discovery obligations and eventually defaulted on this suit. (*See* Plaintiffs' Motion for Sanctions; April 20, 2017 Entry of Default.) Considering Defendant's demonstrated willfulness and its continued participation in infringing activities, an injunction is necessary to prevent further damage and irreparable harm to Plaintiffs.

Accordingly, the undersigned recommends that Defendant, its officers, agents, and employees be permanently enjoined from further infringing Plaintiffs' copyrights. Specifically, the undersigned recommends that they be enjoined from (i) publicly performing, publicly displaying, transmitting, distributing, and/or reproducing CCTV and/or TVB television programming, including Plaintiffs' Copyrighted Programming; (ii) inducing, encouraging, causing, facilitating,

14

and/or materially contributing to the unauthorized public performance, public display, transmission, distribution and/or reproduction of CCTV and/or TVB television programming, including Plaintiffs Copyrighted Programming, by others; and (iii) distributing, selling, advertising, marketing or promoting any h.TV, A1 or A2 devices, or any comparable future devices that contain, connect to, offer for download, transmit, assist in the transmission of, stream, host, provide access to, or otherwise publicly perform, directly or indirectly, by means of any device or process, CCTV and/or TVB television programming, including Plaintiffs' Copyrighted Programming, without permission.

Moreover, because Defendant relies on "domain name registries and registrars and internet service providers to update the software on its devices and stream infringing video content to users of its devices," Plaintiffs request that the Court enjoin these third parties from assisting Defendant. (Pl.'s Mem. at 23-24.) Under Federal Rule of Civil Procedure 65, a court may issue an injunction that binds "other persons who are in active concert or participation with" the defendants and "who receive actual notice of it by personal service or otherwise." Fed. R. Civ. P. 65(d)(2)(c). Several courts in this Circuit have granted relief similar to that sought by Plaintiffs. *See, e.g., Triangl Grp. Ltd. v. Jiangmen City Xinhui Dist. Lingzhi Garment Co., Ltd,* No. 16-CV-1498 (PGG), 2017 WL 2829752, at *11 (S.D.N.Y. June 22, 2017); *Warner Bros. Entm't, Inc. v. Doe,* No. 14-CV-3492 (KPF) (S.D.N.Y. Oct. 3, 2014); *Tory Burch LLC v. Yong Sheng Int'l Trade Co., Ltd*, No. 10-CV-9336 (DAB), 2011 WL 13042618, at *2 (S.D.N.Y. May 13, 2011). Accordingly, the undersigned recommends that the Court grant Plaintiffs' request to enjoin nonparties including those listed in Exhibits A and B. Specifically, the undersigned recommends an Order directing:

(i) registries and registrars to disable the domain names used by the h.TV, A1, and A2 devices (or any comparable future devices) and transfer those domains to Plaintiffs; and
(ii) internet service providers and content hosting websites to cease providing hosting services to HTVI in relation to its infringement.

15

## VI. Post-Judgment Discovery

Federal Rule of Civil Procedure 69 authorizes judgment creditors to obtain post-judgment discovery and permits "wide latitude in using the discovery devices provided by the Federal Rules." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293 (E.D.N.Y. 2011) (internal quotation marks and citations omitted); Fed. R. Civ. P. 69(a). In fact, "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F. 3d 201, 207 (2d Cir. 2012). To enforce a judgment, "the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *GMA Accessories, Inc. v. Electric Wonderland, Inc.*, No. 07 Civ. 3219 (PKC) (DF) 2012 WL 1933558, at *6, (S.D.N.Y. 2012) (internal citations omitted). Post-judgment discovery against a nonparty, however, should be "limited to a search for the [judgment debtor's] hidden assets." *Id.*

Plaintiffs argue that they are entitled to post-judgment discovery in order to obtain information concerning the location of Defendant's assets, which could aid in satisfying this Court's judgment. (*See* Pls.' Mem. at 25.) In particular, Plaintiffs argue that nonparties who have provided services to Defendant, including domain privacy services, internet service providers hosting content and social media platforms, are likely to have information that could aid Plaintiffs in acquiring the aforementioned information. (*See id.*)

Plaintiffs are afforded wide latitude as judgment creditors under Rule 69. However, they do not make any specific discovery request at this time. Accordingly, the undersigned recommends that the Court defer ruling on this issue until such request is made.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion be granted, Plaintiffs be awarded statutory damages in the amount of $46,140,000, and Defendant be permanently enjoined from further infringing Plaintiffs' copyrights. Specifically, the undersigned recommends that Defendant be enjoined from:

(i) publicly performing, publicly displaying, transmitting, distributing, and/or reproducing CCTV and/or TVB television programming, including Plaintiffs' Copyrighted Programming;

(ii) inducing, encouraging, causing, facilitating, and/or materially contributing to the unauthorized public performance, public display, transmission, distribution and/or reproduction of CCTV and/or TVB television programming, including Plaintiffs Copyrighted Programming, by others; and

(iii) distributing, selling, advertising, marketing or promoting any h.TV, A1 or A2 devices, or any comparable future devices that contain, connect to, offer for download, transmit, assist in the transmission of, stream, host, provide access to, or otherwise publicly perform, directly or indirectly, by means of any device or process, CCTV and/or TVB television programming, including Plaintiffs' Copyrighted Programming, without permission.

The undersigned further recommends an Order directing:

(iii) registries and registrars to disable the domain names used by the h.TV, A1, and A2 devices (or any comparable future devices) and transfer those domains to Plaintiffs; and

(iv) internet service providers and content hosting websites to cease providing hosting services to HTVI in relation to its infringement.

Lastly, the undersigned recommends that the Court defer ruling on the issue of post-judgment discovery until a specific request is made.

Plaintiffs are directed to serve this Report and Recommendation on Defendant and file proof of service on the docket by **March 14, 2018**. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal

any order or judgment entered based on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
March 9, 2018